UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ANTHONY JAMES COKLEY,

     Plaintiff,

v.                                                    Case No.:  2:23-cv-465-SPC-NPM

DEREK SNIDER *et al.*,

     Defendants.

                                     /

## <u>OPINION AND ORDER</u>

Before the Court is Defendants Derek Snider, Moses Frost, Oscar Estrada, and Gary Hirschy's Motion for Summary Judgment (Doc. 109).

## **Procedural Background**

Cokley is a prisoner of the Florida Department of Corrections (FDOC). He sues eight prison officials under 42 U.S.C. § 1983 for alleged violations of his Eighth Amendment right to be free from cruel and unusual punishment. The claims stem from a forced cell extraction and three subsequent uses of pepper spray. The Court already dismissed Cokley's official-capacity claims against all defendants. The Court also dismissed deliberate-indifference claims against the movants and failure-to-intervene claims against Snider, Estrada, and Hirshy. (*See* Doc. 89). The surviving claims include failure to intervene against Frost and excessive force against Snider, Frost, Estrada, and

Hirschy.  Also pending are excessive force claims against defendants Aaron Rolon, Justin Grant, Jake Steider, and Robert Hollmeyer.  These four defendants have pending motions to dismiss, which the Court addresses in a separate order.

## Legal Standard

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact" and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The initial burden falls on the movant, who must identify the portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  To defeat summary judgment, the non-movant must "go beyond the pleadings, and present affirmative evidence to show that a genuine issue of material facts exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006).

In reviewing a motion for summary judgment, the Court views the evidence and all reasonable inferences drawn from it in the light most favorable to the non-movant. *See Battle v. Bd. of Regents*, 468 F.3d 755, 759 (11th Cir. 2006).  But "[a] court need not permit a case to go to a jury…when the inferences that are drawn from the evidence, and upon which the non-

movant relies, are 'implausible.'" *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996). If the moving party demonstrates entitlement to judgment as a matter of law, the non-moving party must establish each essential element to that party's case. *Howard v. BP Oil Co., Inc.*, 32 F.3d 520, 524 (1994).

Cokley files his Complaint under 42 U.S.C. § 1983. To state a § 1983 claim, a plaintiff must allege that (1) the defendant deprived him of a right secured under the Constitution or federal law, and (2) the deprivation occurred under color of state law. *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011) (citing *Arrington v. Cobb Cty.*, 139 F.3d 865, 872 (11th Cir. 1998)). In addition, a plaintiff must allege and establish an affirmative causal connection between the defendant's conduct and the constitutional deprivation. *Marsh v. Butler Cty., Ala.*, 268 F.3d 1014, 1059 (11th Cir. 2001).

### Factual Background

The following facts are undisputed unless otherwise noted, and they are primarily based on videos of the uses of force that prompted this suit. At 9:00 a.m. on April 26, 2021, Sergeant Smartt told Cokley he was to be put on property restriction and ordered Cokley to submit to hand restraints. Cokley refused and said, "No. I'm not going on property restrictions just like that. I'm going to make you work."—meaning, Cokley was going to make Smartt call the cell extraction team. (Doc. 109-1 at 17). Cokley taped up the window in his

cell, tampered with a shower head to flood his cell, refused to answer questions from officers, and blocked the door with his body. At 9:23 a.m., Lieutenant Ditoro assembled an extraction team, which including Estrada, Grant, Steider, and Hollmeyer. The team gave Cokley a final warning, and he ignored it.

The Court carefully reviewed videos of the cell extraction and the subsequent uses of pepper spray. The team consisted of five officers in bulky body armor forcing their way into a small cell, so not every detail is visible. The video shows the extraction team forcing the door open, pushing their way into the cell, and struggling to apply restraints to Cokley and his cellmate (who left calmly and did not appear to be resisting) in very close quarters. When the cell extraction team got the cellmate out of the cell, Frost escorted him away. The video did not depict any of the officers striking Cokley. After the officers got the cuffs around Cokely's wrists, they escorted him out of the cell. Cokley was alert and appeared uninjured as officers escorted him to a shower. Cokley physical resisted, and when he got into the shower, he yelled taunts, threats, and insults.

Over the next few minutes, officers gave Cokley repeated orders to cease his disruptive behavior. He did not. At 9:38 a.m. Ditoro received authorization from Warden Snider to use pepper spray and gave Cokley a final warning that officers would use pepper spray if he did not cease his disruptive conduct.

4

Cokley became a bit calmer, but he did not comply with orders to be silent. At 9:42 a.m., Hirschy sprayed three bursts of pepper spray into the shower.

Officers escorted Cokley to a decontamination shower at 9:50 a.m. After the shower, officers took Cokley to a nurse's station for an examination. Cokley refused to allow the nurse to examine him. Officers then escorted Cokley to a new cell.

At 11:30 a.m., Officers Marshall and Grant reported to Hirschy that Cokley was again causing a disturbance by refusing to follow orders, banging on his cell door, and cursing at staff. Warden Snider authorized another use of pepper spray. Hirschy gave Cokley a final warning at 11:38 a.m. At that time, Cokley was not causing a disturbance, so no force was used, and the camera was turned off.

About fifteen minutes later, Marshall reported to Hirschy that Cokley was causing another disturbance by banging on his cell door and cursing and threatening officers. Hirschy ordered Officer Rolon to apply pepper spray, and Rolon sprayed three bursts into the cell. The camera was turned back on for this use of force, and the video shows Cokley sitting quietly on the floor of his cell when Rolon sprayed him.

At 12:12 p.m., Hirschy returned to Cokley's cell and ordered him to submit to hand restraints and put on his boxers. At Hirschy's order, Rolon sprayed one additional burst of pepper spray into the cell. Cokley put his

5

boxers on and allowed officers to apply hand restraints and escort him to a decontamination shower. Cokley took his decontamination shower, underwent an examination by a nurse, and returned to a decontamination cell without further incident.

## Discussion

The core judicial inquiry in an excessive-force claim is "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Sconiers v. Lockhart*, 946 F.3d 1256, 1265 (11th Cir. 2020) (quoting *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010)). A prisoner asserting an excessive force claim must establish two elements: "the official must have both 'acted with a sufficiently culpable state of mind' (the subjective element), and the conduct must have been 'objectively harmful enough to establish a constitutional violation.'" *Id.* (quoting *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)).

A claim satisfies the subjective element if the excessive force was "sadistically and maliciously applied for the very purpose of causing harm." *Id.* The objective component "focuses on whether the official's actions were harmful enough or sufficiently serious to violate the constitution." *Id.* (cleaned up). The Eleventh Circuit has recognized "that where chemical agents are used unnecessarily, without penological justification, or for the very purpose of punishment or harm, that use satisfies the Eighth Amendment's objective

6

harm requirement." *Thomas v. Bryant*, 614 F.3d 1288, 1311 (11th Cir. 2010). It has also found that "[p]epper spray is an accepted non-lethal means of controlling unruly inmates. *Danley v. Allen*, 540 F.3d 1298, 1307 (11th Cir. 2008) (*overruled on other grounds as recognized in Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2010)). And it has called pepper spray "a very reasonable alternative to escalating a physical struggle." *Vinyard v. Wilson*, 311 F.3d 1340, 1348 (11th Cir. 2002).

The first two uses of force were not sadistic or malicious. The cell extraction was reasonable. In fact, Cokley acknowledged in his deposition that he deliberately caused Smartt to call in the extraction team by refusing to submit to hand restraints:

> A…And I told him "No. I'm not going on property restrictions just like that. I'm going to make you work."
>
> Q. What do you mean, "Make you work?"
>
> A. I'm, I'm going to make him call the cell extraction team.

(Doc. 109-1 at 17). And among the taunts Cokley shouted from the shower after the extraction, he said, "I just wanted to see what it's like. I will be ready next time." (Doc. 109-3 at 9:46 – 9:50). Video of the cell extraction depicted a level of force reasonably necessary to get into Cokley's cell, secure his hands with restraints, and escort him out, all while he was physically resisting.

Likewise, first use of pepper spray had penological justification. Cokley was causing a disturbance, and he refused multiple orders to stop. Under the circumstances, three quick bursts of pepper spray, followed promptly by a decontamination shower and the opportunity for a medical examination, does not shock the conscience. Rather, it was a reasonable, non-lethal means of getting Cokley under control without the use of more dangerous and unpredictable force.

The justifications for the second and third uses of pepper spray are less clear. The minutes leading up to the use of force were not filmed. When Rolon sprayed Cokley at 12:04 p.m., Cokley was sitting quietly on the floor of his cell. Hirschy testified he ordered Rolon to spray Cokley based on his own observations and Marshall's report that Cokley was causing a disturbance. Cokley denies he was causing a disturbance and states in his affidavit that Marshall set him up by telling a nearby inmate to make noise. The seconds leading up to the third use of pepper spray were filmed but are still unclear. Hirschy claims Cokley refused repeated orders to put on his boxers and submit to hand restraints, so he ordered Rolon to spray Cokley with a single burst to gain compliance. Cokley claims he was in the process of complying with the order—he was putting on his boxers when Rolon sprayed the single burst. The video is no help here. The cell door mostly obscured the camera's view of Cokley, so it is not clear whether he was complying with Hirschy's order.

8

Because the video conclusively proves the cell extraction and the first use of pepper spray were good faith efforts to restore discipline—not malicious or sadistic uses of force—all defendants are entitled to summary judgment on the claims arising from them.  However, the parties present a genuine dispute about the facts leading up to the second and third uses of pepper spray.  Cokley claims he was quiet and compliant in the minutes leading up to these two uses of force, and that is consistent with the video evidence.

A reasonable jury could find in favor of Cokley on his excessive-force claims against Hirschy and Rolon.  The only other defendant involved in those uses of force is Snider, who approved the use of pepper spray.  However, Cokley does not establish he had a culpable state of mind.  The unrefuted evidence shows that Snider approved the use of force based on reports that Cokley "had continued his disruptive behavior, refusing to follow orders, cursing at staff, and kicking his cell door." (Doc. 109-2 at 3-4).  Even accepting Cokley's version of events as true, there is no evidence that Snider knew the use of pepper spray was not justified.  Snider is entitled to summary judgment.

The claim against Frost for failure to intervene fails.  "An officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance." *Hadley v. Gutierrez*, 526 F.3d 1324, 1330-31 (11th Cir. 2008).  Frost was present for the cell extraction and the first use of pepper spray, but

those uses of force were justified and lawful. Frost was not present for the second and third uses of force, so he could not intervene. Frost is entitled to summary judgment.

The only claim remaining against the movants is the excessive force claim against Hirschy. Hirschy raises two more defenses. First, he argues 42 U.S.C. § 1997(e) bars Cokley from seeking monetary damages because he did not suffer more than *de minimis* injuries. In response, Cokley claims his hands and face burned for days, the skin on his lips peeled off, and he suffered psychologically from the uses of force. Medical records corroborate those claims. The Eleventh Circuit has recognized, "being pepper sprayed sadistically and without penological justification is not a routine discomfort of confinement." *Thompson v. Smith*, 805 F. App'x 893, 905 (11th Cir. 2020). Pepper spray can cause more than *de minimis* injury, and Cokley has presented evidence of physical pain and injury serious enough to defeat summary judgment. It will be up to a jury to decide whether his injuries were *de minimis*. *See id.*

Finally, Hirschy asserts qualified immunity. "Qualified immunity protects government officials from individual liability unless they violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Snorton v. Owens*, 808 F. App'x 814, 820 (11th Cir. 2020). An official invoking qualified immunity must first show he was acting

10

within the scope of his discretionary authority.  The burden then shifts to the plaintiff to show: (1) the official violated a federal statutory or constitutional right; and (2) the unlawfulness of the official's conduct was clearly established at the time of the alleged violation.  *Id.* at 820-21.

"A federal right is 'clearly established' when 'at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he was doing is unlawful.'" *Anderson v. Vazquez*, 813 F. App'x 358, 360 (11th Cir. 2020) (quoting *D.C. v. Wesby*, 138 S. Ct. 577, 589 (2018)).  "In other words, existing law must have placed the constitutionality of the officer's conduct beyond debate."  *Wesby*, 132 S. Ct. at 589 (internal quotations omitted).  To show that a legal principle is clearly established, a plaintiff must produce precedent "clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Id.*

There is no dispute that Hirschy was acting within the scope of his discretionary authority when he ordered Rolon to use pepper spray on Cokley, so the burden shifts to Cokley.  He has carried that burden.  There is no shortage of relevant precedent.  Cokley cites *Whitley v. Albers*, which clarified the standard for Eight Amendment claims arising from uses of force against prisoners: "Where a prison security measure is undertaken to resolve a disturbance...we think the question whether the measure taken included

11

unnecessary and wanton pain and suffering ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously or sadistically for the very purpose of causing harm." 475 U.S. 312, 320-21 (1986).

As *Whitley* shows, the Eighth Amendment's prohibition of excessive and unnecessary force in the prison context is clearly established. And more specifically, the Eleventh Circuit has recognized that the non-spontaneous use of chemical agents on inmates can violate the Eighth Amendment when the inmate is not presenting a threat of immediate harm to himself or others. *Thomas*, 614 F.3d 1288, 1306-17 (11th Cir. 2010). Hirschy is not entitled to qualified immunity.

Finally, the Court turns to the non-moving defendants. Based on the evidence before the Court and the foregoing analysis, it appears Grant, Steider, and Hollmeyer are entitled to summary judgment. If Cokley disagrees, he may file a response explaining why—along with any additional relevant evidence—within 21 days of this Opinion and Order. Otherwise, the Court will enter summary judgment in favor of Grant, Steider, and Hollmeyer.

Accordingly, it is hereby

**ORDERED:**

Defendants Derek Snider, Moses Frost, Oscar Estrada, and Gary Hirschy's Motion for Summary Judgment (Doc. 109) is **GRANTED in part and DENIED in part.**

1. Cokley's claims against Snider, Frost, and Estrada are **DISMISSED**.

2. Cokley may further oppose summary judgment for Grant, Steider, and Hollmeyer by filing a response within **21 days** of this Opinion and Order. Otherwise, the Court will enter summary judgment for those defendants.

**DONE** and **ORDERED** in Fort Myers, Florida on March 9, 2025.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA: FTMP-1
Copies: All Parties of Record

13